

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-24-2005

# DiGiacomo v. Teamsters Pension

Precedential or Non-Precedential: Precedential

Docket No. 04-3510

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"DiGiacomo v. Teamsters Pension" (2005). *2005 Decisions*. Paper 591.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/591

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-3510
_____

ALFRED DIGIACOMO,

Appellant,

v.

TEAMSTERS PENSION TRUST FUND
OF PHILADELPHIA AND VICINITY,

Appellee.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civil Action No. 04-1090)
District Judge: Honorable Legrome D. Davis

_____

Argued: Friday, May 27, 2005

_____

Before: SCIRICA, *Chief Judge*, ALITO and
GARTH, *Circuit Judges*

_____

## OPINION OF THE COURT

_____

DORIS J. DABROWSKI, ESQ. (Argued)
1500 Walnut Street, Suite 900
Philadelphia, PA 19102

*Attorney for Appellant*
*Alfred DiGiacomo*

SUSAN A. MURRAY, ESQ. (Argued)
Freedman & Lorry, P.C.
400 Market Street, Suite 900
Philadelphia, PA 19106

*Attorney for Appellee*
*Teamsters Pension Trust Fund*
*of Philadelphia and Vicinity*

Garth, *Circuit Judge*:

Alfred DiGiacomo was a member of the Teamsters Union and a participant in the Teamsters Pension Trust Fund of Philadelphia and Vicinity (the "Fund") (the appellee here). In computing DiGiacomo's accrued pension benefits, the Fund disregarded some 10.5 years of his service time rendered prior

to the passage of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. In so doing, the Fund relied on certain break-in-service provisions in its governing pension plan, which explicitly permitted the Fund to exclude DiGiacomo's pre-ERISA service time accrued prior to his break-in-service, as defined in the plan. DiGiacomo thereupon brought this ERISA action against the Fund, alleging that it incorrectly computed his accrued benefits by refusing to aggregate his pre-break and post-break service time.

The District Court granted the Fund's motion to dismiss, holding that ERISA permitted the Fund to disregard DiGiacomo's service time preceding his break-in-service, which occurred before ERISA's effective date of January 1, 1976. We will reverse and remand to the District Court for further proceedings.

I.

The material facts underlying this appeal are straightforward and uncontested. From 1960 to 1971, DiGiacomo earned a total of 10.5 years of benefit service for "covered employment," which is defined in the Teamsters Pension Plan of Philadelphia and Vicinity, Amended and Restated, effective June 1997 (the "Plan"), as "any employment in a bargaining unit in a capacity for which Employer Contributions on behalf of an Employee are payable to the Trust Fund in accordance with the terms of a collective bargaining

agreement with the Union."  For the next five years, between 1972 and 1977, DiGiacomo worked outside covered employment and did not return to covered employment until some time in 1978.  Upon returning to covered employment in 1978, he earned approximately eighteen years of additional benefit service.

DiGiacomo applied to the Fund for pension benefits on February 4, 2000.  The Fund Administrator approved his application on March 17, 2000, crediting him with the appropriate amount of service time for his post-1978 employment.[1]  The Fund, however, determined that the benefit service DiGiacomo earned between 1960 and 1971 was forfeited pursuant to the express provisions of the Plan.[2]  DiGiacomo had incurred a break-in-service, as defined in the Plan, upon leaving covered employment from 1972 to 1977.  As a result, the Fund was not required under the express provisions of the Plan to aggregate DiGiacomo's years of service credited before he incurred the break-in-service (from 1972-1977) in determining

---

[1]  The record reveals that the Fund credited DiGiacomo with 18 years of vesting service and 16.8 years of contributory benefit service.  On April 24, 2003, the Fund adjusted the credits to 20 years of vesting service and 18.81 years of benefit service.

[2]  In his appellate brief, DiGiacomo asserts that "the Fund credited him with 10.5 years of service for purposes of accrual and vesting." App. Br. at 2.  On this appeal, we decide only the issue presented to us – whether the 10.5 years of pre-break service must be included in the calculation of DiGiacomo's accrued benefit.

his accrued pension benefit. *See* Plan Article I, Section S.3(a).[3]

After appealing to the appropriate administrative tribunals, and thereby exhausting his administrative remedies, DiGiacomo filed the present action in federal court.[4]

## II.

The question we have to decide is whether, for accrual of benefit purposes, ERISA prevents pension plans from denying

---

[3] The Plan provided, in pertinent part:

3. Years of Benefit Service shall be aggregated, except in the following situations:

> (a) Benefit Service credited before an Employee's most recent Break in Service shall be forfeited.

Plan, Article I, Section S.3(a).

[4] The District Court had subject matter jurisdiction over this case pursuant to § 502(e) of ERISA, 29 U.S.C. § 1132(e). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

As this Court is reviewing the District Court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, the standard of review is plenary. *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1394 (3d Cir. 1991). In addition, all facts alleged in the complaint and all reasonable inferences that can be drawn from them must be accepted as true. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990).

credit for pre-ERISA service time accrued prior to a break-in-service. DiGiacomo argues that ERISA (under § 204) trumps the Plan's break-in-service provisions, thus requiring the Fund to aggregate his pre-break and post-break service in determining his accrued benefit. The Fund contends that ERISA does not override a pre-ERISA plan's break-in-service provisions, but rather permits the Fund (under § 203) to deny DiGiacomo credit for 10.5 years of his pre-break service. Whereas DiGiacomo relies on Section 204 of ERISA, 29 U.S.C. § 1054, which governs the accrual of benefits, the Fund relies on Section 203 of ERISA, 29 U.S.C. § 1053, which regulates vesting.[5]

In deciding this appeal, we must therefore examine the relationship between the vesting (§ 203) and accrual of benefit (§ 204) provisions of ERISA. As discussed more fully below, Congress in enacting these provisions has left us with a conundrum: § 203 specifically includes language permitting plans or employers to disregard pre-ERISA service time rendered before a break-in-service *with regard to vested benefits*; § 204, by contrast, contains no such language *with regard to accrued benefits*. While this appeal involves the *accrual* of benefits, as distinct from *vesting*, the Fund nonetheless urges us to read the relevant language in § 203

---

[5] For ease of reference, throughout this opinion we will refer to the vesting provision of ERISA as § 203 rather than 29 U.S.C. § 1053, and to the accrual provision of ERISA as § 204 rather than 29 U.S.C. § 1054.

-6-

(allowing the disregard of service time prior to ERISA and prior to a break-in-service *for vesting purposes*) into the text of § 204 (lacking similar language *for accrual of benefit purposes*).

A.

We begin by observing that the Supreme Court, in *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 749 (2004), articulated the important distinction between *vesting* and *accrual*. Accrual, as the Supreme Court noted, is "the rate at which an employee earns benefits to put in his pension account." *Id.* (citing 29 U.S.C. § 1054). Vesting is "the process by which an employee's already-accrued pension account becomes irrevocably his property." *Id.* (citing 29 U.S.C. § 1053 and *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 366 n.10 (1980)). Vested benefits, then, are the "nonforfeitable" subcategory of accrued benefits. 29 U.S.C. § 1002(19).[6]

---

[6] 29 U.S.C. § 1002(19) provides:

The term "nonforfeitable" when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan . . . .

*Id.*

ERISA § 204(b)(1)(D) provides for the accrual of benefits for pre-ERISA service based upon an employee's "years of participation" in a plan. 29 U.S.C. § 1054(b)(1)(D).[7] Moreover, § 204(b)(4) starts the clock for "participation" at "the earliest date on which the employee is a participant in the plan" and further notes that such participation is included in the "period of service required to be taken into account" under § 202(b).[8] As such, in calculating the credited service time for

---

[7] This subsection states:

Subparagraphs (A), (B), and (C) shall not apply with respect to years of participation before the first plan year to which this section applies but a defined benefit plan satisfies the requirements of this subparagraph with respect to such years of participation only if the accrued benefit of any participant with respect to such years of participation is not less than the greater of--

(i) his accrued benefit determined under the plan, as in effect from time to time prior to September 2, 1974, or
(ii) an accrued benefit which is not less than one-half of the accrued benefit to which such participant would have been entitled if subparagraph (A), (B), or (C) applied with respect to such years of participation.

29 U.S.C. § 1054(b)(1)(D).

[8] Section 202(b) is cross-referenced in § 204(b)(4)(A), where it is referred to as § 1052(b), as follows:

For purposes of determining an employee's accrued benefit,

-8-

accrual purposes, the statute provides a cross-reference to §
202(b), which establishes the minimum participation standards
concerning employee benefit rights. That subsection provides,
with some exceptions, none of which are relevant here, "*all
years of service* with the employer or employers maintaining the
plan shall be taken into account in computing the period of
service for purposes of subsection (a)(1) of this section." 29
U.S.C. § 1052(b)(1) (emphasis added).

Pursuant to the plain language of the statute, the Fund
was required to credit DiGiacomo with "all years of service" in
computing his accrued pension benefits, including his 10.5 years
of pre-break service. Nothing in § 204 of ERISA allows the
Fund to apply its break-in-service provisions to the calculation
of accrued benefits.

As noted, ERISA treats breaks-in-service differently for
vesting purposes. ERISA § 203(b) explicitly allows pension

---

the term "year of participation" means a period of service
(beginning at the earliest date on which the employee is a
participant in the plan and which is included in a period of
service required to be taken into account under section
1052(b) of this title, determined without regard to section
1052(b)(5) of this title) as determined under regulations
prescribed by the Secretary which provide for the calculation
of such period on any reasonable and consistent basis.

29 U.S.C. § 1054(b)(4)(A).

plans to apply break-in-service provisions to the calculation of *vested benefits* arising from pre-ERISA service:

> (1) In computing the period of service under the plan for purposes of determining the nonforfeitable percentage under subsection (a)(2) of this section, all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account, except that the *following may be disregarded*: . . .
>
> (F) *years of service before this part first applies to the plan if such service would have been disregarded under the rules of the plan with regard to breaks in service, as in effect on the applicable date . . . .*

29 U.S.C. § 1053(b)(1)(F) (emphasis added).

Were § 203 applicable here, the Fund would thus have express statutory warrant to disregard DiGiacomo's pre-break service time. As it is, however, ERISA § 204 is the applicable statute, and significantly, it contains no exclusion paralleling that of § 203, 29 U.S.C. § 1053(b)(1)(F), *i.e.*, permitting an exclusion for years of service before ERISA, followed by a break-in-service before ERISA.[9]

---

[9] In arguing that § 204 is irrelevant to this appeal, we suggest that Judge Alito has oversimplified the interplay between the vesting

We now proceed to examine whether this difference in statutory language means, as DiGiacomo contends, that Congress intended to treat accrued and vested benefits differently respecting breaks-in-service.

B.

We are not a *tabula rasa* in approaching this question. While we have never expressly held that Congress intended to treat vesting and accrual of benefits the same with respect to breaks-in-service, we have affirmed, without opinion, a district court decision that has so held. *See Haas & Cass v. Boeing Co.*, Civ. A. No. 90-7414, 1992 WL 221335, at *4-*7 (E.D. Pa. Sept. 4, 1992), *aff'd without opinion,* 993 F.2d 877 (3d Cir. 1993). Such an affirmance, however, has no precedential value. *See*

---

(§ 203) and the accrual of benefit (§ 204) provisions. He assumes that the loss of vesting credit for certain years of service necessarily and unequivocally entails the loss of accrued benefit credit for those same years of service. However, § 203(b)(1)(F) does not say that a break-in-service leads to forfeiture of *all* previously accrued benefits. Rather, the statutory scheme is somewhat more complex, providing that all "years of service" prior to the break-in-service can be disregarded in calculating the relevant period of service for *vesting* purposes. To borrow Judge Alito's helpful analogy, *see* dissenting opinion at 2, DiGiacomo's 10.5 years of accrued benefit credit might be equated to chalk marks beside the employee's name, but they are not necessarily erased merely because related marks in a separate category for vested benefit credits have been lost due to a break-in-service.

Third Circuit Internal Operating Procedure § 5.7 (July 2002) (explaining that only our published opinions have precedential value).

We have also issued one precedential opinion addressing a similar issue. In *Tanzillo v. Local Union 617, International Brotherhood of Teamsters*, 769 F.2d 140 (3d Cir. 1985), we held that "ERISA . . . explicitly recognizes break-in-service forfeiture of . . . credits which had been accrued prior to the effective date of ERISA, if such break-in-service forfeiture is provided for in the applicable plan document." *Id.* at 145. In *Tanzillo*, though, we never dealt with § 204, but rather we relied exclusively on § 203 – the vesting section – in upholding a plan's break-in-service rules. *Id.* at 144-45. For this reason, *Tanzillo* is not controlling here.

Accordingly, we have yet to address and answer, in a precedential opinion, the question that DiGiacomo has brought before us. That is not the case outside this Circuit – two of our sister Courts of Appeals have already specifically examined and analyzed the issue, reaching contrary conclusions. *Compare McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 320 F.3d 151, 153 (2d Cir. 2003) (holding that ERISA § 204 trumps a plan's break-in-service provisions that purport to limit the accrual of benefits arising from pre-ERISA employment) *with Jones v. UOP*, 16 F.3d 141, 143 (7th Cir. 1994) (refusing "to treat vesting and accrual of benefits differently with respect to breaks in service" and denying credit

for pre-ERISA break-in-service time).[10]  As such, the asymmetrical treatment of breaks-in-service in the statutory language of ERISA §§ 203 and 204, although explainable as the difference between vesting and accrual of benefits, has led to a division of two of our sister Courts of Appeals in their respective holdings.  Not surprisingly, then, it has also led to a division in this Court, in which our dissenting colleague Judge Alito has concluded that § 203 should control this appeal.  In this respect, Judge Alito has aligned himself with the result reached by the Seventh Circuit.  *See Jones*, *infra*.

While we admit that this question is a close and difficult one, we hold, in accord with the Second Circuit, that the question posed at the outset of this opinion – "whether, for accrual of benefit purposes, ERISA prevents pension plans from denying credit for pre-ERISA service time accrued prior to a break-in-service" – is best answered by looking to the plain and unambiguous text of the benefit accrual section of ERISA (§ 204), as Congress has written it.  Our answer is thus "yes," as that section requires that "all years of service" must be taken into account in calculating an employee's (DiGiacomo's) accrued benefit.

---

[10] *See also Redmond v. Burlington N. R.R. Co. Pension Plan*, 821 F.2d 461, 466-67 (8th Cir. 1987).

1.

In *Jones v. UOP*, the Seventh Circuit declined to treat vesting and accrual of benefits differently with respect to breaks-in-service, thus reading into § 204 (accrual of benefits) the exclusion clause of § 203 (vesting). 16 F.3d at 143 (Posner, J.). The *Jones* facts resemble those in this appeal in all essential respects, with one possibly significant exception, having to do with the likelihood of double recovery. *See* note 12 *infra*. Jones began service with UOP in 1949. He left work in 1960, returned to work in 1961, and continued working until retirement in 1985. UOP amended its plan (referred to in the opinion as the 1940 plan) in 1968 to base its benefits upon "credited past service." "Service" was defined as "an Employee's last continuous period of employment with the Employer." *Id.* at 142. By the time Jones retired, UOP had become a wholly-owned subsidiary of Signal Company, and the UOP plan merged into the Signal Plan, which carried forward the same benefit structure. *Id.* at 142-143.

When Jones retired he was apparently entitled to two benefits: the much larger benefit based on the then-current Signal Plan, including all relevant years of service under the predecessor plan (the UOP plan), and a much smaller supplemental benefit attributable solely to his eleven years of service from 1949 to 1960 under the former UOP plan. The latter benefit, which had vested, consisted of Jones' employee contributions plus interest to his date of retirement. At issue in

the case was whether Jones was entitled to credited service for the eleven years of employment from 1949 to 1960 so as to increase the benefits to which he would be entitled under the successor plan (the Signal Plan). From a purely contractual standpoint, he was clearly not entitled to credit for that service under the plan's break-in-service provisions.

The Seventh Circuit began its analysis by observing that the only two cases to have considered the issue at that point read the exception for breaks-in-service found in § 203 as though the same language appeared in § 204, but that they did so without any analysis. *Id.* at 143 (citing *Redmond v. Burlington N. R.R. Co. Pension Plan*, 821 F.2d 461 (8th Cir. 1987); *Jameson v. Bethlehem Steel Corp.*, 634 F. Supp. 688 (E.D. Pa. 1986), *aff'd without opinion*, 802 F.2d 447 (3d Cir. 1986), *cert. denied,* 479 U.S. 1089 (1987)).[11] The Seventh Circuit noted that "it would be perilous to assume from the absence of an express reference to breaks in service that section 204(b)(1)(D) was intended to override them." *Id.* This is particularly so, the court opined, given that the "purpose of section 204 is to prevent the employer from defeating the vesting section, which immediately precedes it in the statute, by backloading benefits (that is, making benefits accrue very slowly until the employee is near retirement age)." *Id.* (citing Jeffrey D. Mamorsky, *Employee Benefits Handbook* § 18.16 (3d ed. 1992)). Inasmuch as "backloading" is a distinct

_____

[11] *Jameson*, like *Haas & Cass*, *supra*, is not a precedential opinion in this Circuit. *See* 3d Cir. IOP § 5.7.

problem from breaks-in-service, the Seventh Circuit concluded that, notwithstanding the absence of explicit statutory exclusion for pre-ERISA break-in-service provisions, "there is no indication that Congress in dealing expressly with the former problem in section 204(b)(1)(D) meant for the latter problem to be treated differently under section 204 than under section 203." *Id.* at 144.[12]

_____

[12] The Seventh Circuit initially took the view that the fact that Jones' rights (for the eleven years of service from 1949 to 1960) had vested under the 1940 plan was insignificant to the calculation concerning the credited service under the Signal Plan. But the fact that Jones was effectively seeking "double credits" for 1949 to 1960 played some part in Judge Posner's decision, although the extent of its significance is unclear:

> [Jones] is seeking, in effect, double credits for 1949 to 1960--the credit that he has already used to obtain a pension benefit under the 1940 plan and credit for the same years toward the pension he earned under the Signal Plan. There is nothing to suggest that section 204 was intended to confer such a windfall. That section should be read together with section 203 to protect the employee against efforts to circumvent section 203's vesting rules, rather than to defeat break in service provisions in plans adopted before ERISA was. There were no such efforts here.

*Jones,* 16 F.3d at 144. Here, of course, there is no issue concerning double credits or the likelihood of a windfall in favor of the beneficiary.

We note that in *McClain v. Retail Food Employers Joint Pension Plan*, 413 F.3d 582 (7th Cir. 2005), the Seventh Circuit

2.

In *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, the Second Circuit parted from the Seventh Circuit, declining to treat vesting and accrual of benefits the same with respect to breaks-in-service. 320 F.3d at 159. *McDonald*, like this case, involved a suit by a retiree who had suffered a break-in-service under a pension plan's pre-ERISA break-in-service rules. He alleged that the plan's calculation of accrued years of service violated ERISA. The Second Circuit, focusing solely upon the statutory language, concluded that § 204(b) is unambiguous: "had Congress intended to permit pre-ERISA break-in-service provisions to apply when calculating accrued benefits, it could have done so." *Id.* (citing ERISA § 203(b)(1)(F), 29 U.S.C. § 1053(b)(1)(F)). The court thus refused to look beyond the plain text of the statute, in holding that, under §§ 204(b) and 202(b), pre-ERISA break-in-service provisions, which would disregard or deny credit for such service, do not apply when calculating accrued benefits.[13]

---

recently reaffirmed its holding in *Jones*.

[13] *Hoover v. Bank of America Corp.*, 286 F. Supp. 2d 1326 (M.D. Fla. 2003), has expressly followed *McDonald*. *Id.* at 1344 (finding the Second Circuit's decision in *McDonald* "more faithful to the canons of statutory construction and thus more persuasive").

C.

In *Arthur Andersen LLP v. United States*, 125 S. Ct. 2129 (2005), the Supreme Court, although construing a different statute, employed the same principle we do today – "we must simply interpret the statute as written." *Id.* at 2135. Reading ERISA § 204 as it is written, we are persuaded that our position and that of the Second Circuit is more consistent with established canons of statutory construction than the Seventh Circuit's position.

Two canons of statutory construction particularly inform our analysis. The first is that a court must begin with the language of the statute. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (citations omitted). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).

With respect to the question presented here, the statutory language is unambiguous. ERISA § 204 establishes permissible accrual practices for pension plans. It makes no provision for break-in-service rules. Nor does it provide for disregarding pre-ERISA break-in-service time in calculating an employee's pension. Where Congress wanted to provide for break-in-service provisions in ERISA, it did so explicitly, as illustrated by § 203.

In view of Congress's failure to include a section in § 204 for accrued benefits which parallels the section found in § 203 for vesting, we rely on a second canon of statutory construction: "[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994) (quoting *Chicago v. Envtl. Defense Fund*, 511 U.S. 328, 338 (1994)). We are satisfied that none of the Fund's arguments are strong enough to overcome this presumption.

The Fund relies, as it must, on outside interpretive sources – *i.e.,* related statutory terms, applicable regulations, and relevant legislative history – in arguing that Congress intended to treat vesting and accrual of benefits the same with respect to breaks-in- service. The problem with such reliance, however, is that these sources are ambiguous at best, and therefore fail to evince clearly a congressional intent to give effect to break-in-service rules precluding an employee from receiving certain accrued benefits. In these circumstances, we venture no further than the statutory language in deciphering congressional intent.[14]

---

[14] Because, as we have stated, our decision is grounded in the plain and unambiguous text of § 204, we see no reason to further address secondary sources. For an exhaustive analysis of these sources, concluding that they demonstrate Congress's intent to treat vesting and accrual differently with regard to breaks-in-service, see *McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund*, 153 F. Supp. 2d 268 (S.D.N.Y. 2001). For an analysis of some of the same

-19-

As the Second Circuit noted, "ERISA is a complicated enough statute without the courts soldering new sections onto it." *McDonald*, 320 F.3d at 159.

Finally, we cannot say that the difference in language enacted by Congress respecting vesting and accrual of benefits is "so bizarre that Congress could not have intended it." *Demarest v. Manspeaker*, 498 U.S. 184, 191 (1991) (internal quotation and citation omitted). Congress reasonably may have concluded, when it comes to the problem of *vesting*, that an employee, before he becomes entitled to pension or retirement benefits, should serve his employer continuously for the designated vesting period without departures or breaks-in-service. It is not clear to us that the same principle holds true for the accrual of an employee's benefits. Once an employee has become vested, Congress, by its explicit expression, has determined that all the benefits whenever accumulated by that employee, regardless of any discontinuity in service, should be included in his retirement rights. Such disparate treatment of vesting on the one hand and accrual on the other is neither irrational nor arbitrary, but could very well reflect Congress's motive in maximizing employee benefits once entitlement through vesting has been achieved. We have interpreted Congress's intent to that effect.

---

sources reaching the opposite conclusion, see *Haas & Cass v. Boeing Co.*, Civ. A. No. 90-7414, 1992 WL 221335 (E.D. Pa. Sept. 4, 1992).

We recognize that there might also be sound policy reasons for reaching the *Jones* result, and the result advocated by Judge Alito. However, such reasons do not, in our view, overcome the plain language of the statute. Change in legislation is a task for Congress, and if our interpretation of what Congress has said so plainly is now disfavored, it is for Congress to cure. We do not sit here as a policy-making or legislative body.

## III.

Accordingly, we will reverse the judgment of the District Court dated July 29, 2004, and we will remand to the District Court for further proceedings consistent with this opinion.

ALITO, Circuit Judge, dissenting:

I agree that the relevant provisions of ERISA speak in unambiguous terms, but I disagree with the majority about what they say. In my view, the majority misreads § 204 by equating the accrual of benefits with an unconditional right to receive benefits, even though benefits become unconditional through vesting, not accrual. Under the minimum vesting standards in § 203, the Plan was plainly allowed to treat benefits accrued prior to 1972 as forfeitable upon a break in service. Since I believe the plain text of the statute requires us to affirm the District Court's decision, I respectfully dissent.

I.

The majority quotes at length from ERISA §§ 202 and 204, but these sections of the Act are largely irrelevant to the appeal. DiGiacomo admits that the Fund properly credited him with accrued benefits. An exhibit attached to his complaint indicates that he accrued benefits pursuant to the terms of the Plan at a steady rate for each year of service prior to 1972. App. at 16. The notice also indicates, however, that these accrued benefits were "lost" as a result of his "break in service" that year. Id. Since DiGiacomo does not challenge the Fund's interpretation of the Plan, the only question we must decide is whether the Fund could deny him benefits that accrued before ERISA applied to the Plan and that were forfeited under the terms of the Plan then in effect.

ERISA clearly answers this question in the affirmative. Section 203 provides that "for purposes of determining the nonforfeitable percentage" of an employee's "accrued benefit," a plan may permissibly disregard "years of service before this part first applies to the plan if such service would have been disregarded under the rules of the plan with regard to breaks in service, as in effect on the applicable date." 29 U.S.C. § 1053(a)(2), (b)(1)(F). The Plan in effect in 1972 was thus entitled to treat all benefits DiGiacomo had accrued prior to his break as "forfeitable" – that is, as conditional only. See ERISA § 3(19), 29 U.S.C. § 1002(19).

-22-

The Plan did just that. Although it provided for benefit accrual in each year of service, see App. at 20, it also provided that a break in service would result in the loss of prior vesting credit. See id. at 19. When DiGiacomo left covered employment in 1972, his benefits accordingly became forfeitable under § 203(b)(1)(F). Since the Plan further provided that accrued benefits would be forfeited upon a break in service, see App. at 20, DiGiacomo's departure from covered employment simultaneously resulted in the forfeitability and forfeiture of his benefits.[15]

Observing that ERISA's minimum standards for vesting and accrual differ, the majority concludes that "the Fund was required to credit DiGiacomo with 'all years of service' in computing his accrued pension benefits." Maj. Op. at [[9]]. The majority seems to assume that ERISA also required the Plan to include all of his accrued benefits in the calculation of his

---

[15] The convergence of the conditions that led to the forfeitability and forfeiture of DiGiacomo's benefits illustrates why § 204 makes no mention of breaks in service. The majority ponders this omission, but a close reading of the statute reveals that § 203's break-in-service provisions would be superfluous in § 204. The loss of vesting credit as a result of a break in service under § 203(b)(1)(F) leaves a participant's pre-break accrued benefits forfeitable under the terms of his plan, but nothing in ERISA prevents a plan from making the break itself a forfeiture event. If a plan's pre-ERISA break-in-service provisions may disregard vesting credit earned prior to ERISA's effective date, it necessarily follows that the plan may call for the forfeiture of accrued benefits protected by that vesting credit.

-23-

pension, but ERISA says nothing of the kind. As the Supreme Court explained in Central Laborers' Pension Fund v. Heinz, accrual is simply "the rate at which an employee earns benefits to put in his pension account." 541 U.S. 739, 749 (2004). Accrued benefits, in other words, are like chalk marks beside the employee's name. They are conditional rights that do not become "irrevocably his property" until they vest. Id. Only then do they become "legally enforceable against the plan." ERISA § 3(19), 29 U.S.C. § 1002(19). Prior to vesting, accrued benefits can be, and in this case were, forfeited under the terms of a participant's plan.

DiGiacomo alleges that he became a fully vested participant after returning to covered employment,[16] but nothing in the Plan entitled him to restoration of his forfeited accrued

---

[16] Although the complaint does not mention it, DiGiacomo's appellate brief appears to claim that some or all of his benefits had vested even prior to the break in service. See DiGiacomo's Br. at 16. This claim, if true, would not affect the analysis above. Regardless of how they were characterized under the 1972 version of the Plan, DiGiacomo's pre-break benefits were clearly "forfeitable" within the meaning of ERISA, since the Plan provided for their forfeiture if a break in service occurred. More to the point, ERISA did not require the Plan to treat them as nonforfeitable. Under § 203(b)(1)(F), the Plan could treat them as forfeitable if they accrued before ERISA applied to the Plan and were so treated under the version of the Plan then in effect. Because they were treated as forfeitable by the Plan in 1972, they could be forfeited upon the occurrence of any condition set forth therein, including a break in service.

benefits. ERISA certainly does not require their restoration. To the contrary, § 203 recognizes the enforceability of pre-ERISA break-in-service provisions as applied to benefits accrued prior to the Act's effective date. See Tanzillo v. Local Union 617, Int'l Bhd. of Teamsters, 769 F.2d 140, 145 (3d Cir. 1985). Under the Fund's unchallenged interpretation of the Plan, DiGiacomo was permanently stripped of any accrued benefits when his break in service occurred.

DiGiacomo's authorities to the contrary are unpersuasive. The Second Circuit in McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund concluded that the plain text of §§ 202 and 204 required a plan to provide for benefit accrual in every year of an employee's participation. See 320 F.3d 151, 156-57 (2d Cir. 2003); cf. 29 C.F.R. § 2530.210(a)(2) (requiring qualified plans to take into account "all years of participation . . . for purposes of section 204"). This conclusion simply begs the question. The question is not whether benefits must accrue in every year of participation but whether benefits accrued in years prior to ERISA's effective date may be forfeited under break-in-service provisions then in effect. The answer supplied by § 203(b)(1)(F) is clearly affirmative.

II.

Although I agree that the Court's inquiry should begin and end with the statute's plain text, I note that the legislative history of §§ 203 and 204 confirms my interpretation. The reports on the embryonic legislation usually do not discuss accrual or, when they do, discuss it only under the rubric of vesting. See, e.g., S. Rep. No. 93-383, 1974 U.S.C.C.A.N. 4890, 4929, 4935-36; H.R. Conf. Rep. No. 93-1280, 1974 U.S.C.C.A.N. 5038, 5049, 5054-57; cf. S. Rep. No. 93-383, 1974 U.S.C.C.A.N. at 4890 (explaining, without reference to the concept of accrual, that the legislation was designed "to make sure that those who do participate in [retirement] plans do not lose their benefits as a result of unduly restrictive forfeiture provisions"); H.R. Rep. No. 93-807, 1974 U.S.C.C.A.N. 4670, 4671 (same).

Congress evidently understood accrual as simply the handmaiden to vesting. As the Senate report on S. 1179 explains, "[i]t is necessary to provide a statutory definition of an 'accrued benefit' because, unless this is a defined amount, vesting of an 'accrued benefit' in whatever form is specified by the plan has little, if any, meaning." S. Rep. No. 93-383, 1974 U.S.C.C.A.N. at 4935; see also H.R. Conf. Rep. No. 93-1280, 1974 U.S.C.C.A.N. at 5055 (explaining that accrual standards are necessary to "limit the extent of 'back-loading' permitted under the plan"); Jones v. UOP, 16 F.3d 141, 143-44 (7th Cir. 1994) (same); 1 Jeffrey D. Mamorsky, Employee Benefits Handbook § 17:36 (2004) ("The minimum vesting standards of the Code would be rendered meaningless if the plan sponsor

were free to backload the plan . . . because a mandated large percentage of nothing is still nothing.").

This history confirms that § 204 was not designed to afford any right to a guaranteed retirement benefit apart from the Act's minimum vesting standards. Under those minimum vesting standards, the Plan was entitled to treat DiGiacomo's benefits as forfeitable because they accrued before ERISA applied to the Plan and because they were so treated under the terms of the Plan then in effect. See § 203(b)(1)(F). Having permissibly deemed them forfeitable, the Plan could, and did, call for their forfeiture.

III.

Because ERISA provides DiGiacomo no right to receive the benefits that were forfeited under the Plan's break-in-service provisions in effect at the time the benefits accrued, his complaint fails to state a claim on which relief can be granted. The District Court correctly granted the Fund's motion to dismiss it. The majority errs in reversing that decision, and I respectfully dissent.