# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 04-3360

THERON M. MCCLAIN,

*Plaintiff-Appellant,*

v.

RETAIL FOOD EMPLOYERS JOINT PENSION
PLAN and BOARD OF TRUSTEES OF RETAIL
FOOD EMPLOYERS JOINT PENSION PLAN,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 03 C 403—**Sarah Evans Barker**, *Judge.*

_____

ARGUED APRIL 7, 2005—DECIDED JUNE 27, 2005

_____

Before MANION, ROVNER, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.*  The Retail Food Employers Joint
Pension Plan denied Theron McClain pension benefits.
McClain sued the Plan and its board of trustees (collectively,
"the Plan") under the Employee Retirement Income Security
Act ("ERISA"). McClain specifically alleged that the Plan
violated ERISA's standard for handling accrued benefits.

The district court granted summary judgment for the Plan. McClain appeals. We affirm.

McClain worked for the National Tea Company for sixteen years, from March 1957 to March 1973. During that period, he participated in the Plan. McClain left National Tea to manage his own retail food store, at which time he terminated his participation in the Plan. Eleven years later, however, McClain went to work for Grace Foods and again became a Plan participant. He continued to participate in the Plan from April 1984 until he left Grace Foods nine years later in April 1993.

At that juncture, McClain began receiving pension benefits from the Plan based upon his service at Grace Foods. In 2001, McClain applied for pension benefits for his time with National Tea,[1] but the Fund denied the application, finding that McClain did not qualify for benefits from the earlier period. According to the Plan, the pension benefits that McClain had accrued while at National Tea never vested because of McClain's break in service, i.e., the period between his two participation periods, and the corresponding contractual terms of the Plan.

Before further describing the Plan's denial, it is helpful to distinguish "accrued" from "vested" in this ERISA context. "[A]ccrued benefits refer to those normal retirement benefits that an employee has earned at any given time during the course of employment." *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 635 n.5 (7th Cir. 2004) (internal quotation omitted). By contrast, "[v]ested benefits . . . refer to those normal retirement benefits to which an employee has a nonforfeitable

---

[1] The record and the briefs do not reveal why McClain, who left the Plan for good in 1993, waited until 2001 to submit his application pertaining to his National Tea employment.

claim." *Id.* (internal quotation omitted). In short, an employee's vested benefits are the accrued benefits that the employee is actually "entitled to keep." *Id.* (internal quotation omitted).

McClain was denied benefits based upon § 4.4(e) of the Plan. Under the Plan, pension benefits are based upon an employee's "eligibility service," and McClain's time at National Tea qualified as "eligibility service." Nonetheless, pursuant to § 4.4(e), if an employee has a "break in service," all of the "eligibility service" that he accumulated before his break cannot "be counted for purposes of determining his eligibility for a pension benefit." For periods before January 1, 1976 (i.e., pre-ERISA), § 4.4(a) of the Plan defines a "break in service" as two consecutive calendar years in which the employee had failed to accumulate any "eligibility service." However, § 4.4(a) negates the ill effects of any such break on the employee if, before the defined break, the employee was "eligible for a pension benefit in accordance with the rules of the Plan then in effect."

Here, McClain had a defined "break in service" before 1976 because he did not accumulate any "eligibility service" during the two consecutive calendar years of 1974 and 1975. The matter then turns to whether McClain's pre-break benefits can be saved by § 4.4(a). The rules of the Plan in effect before McClain's defined 1974-1975 "break in service"—that is, the rules in effect in 1973—come from the 1966 version of the Plan, as amended in 1972. Under § 5.5 of that version, an employee had to meet two key requirements to become eligible for a pension benefit: (1) his employment terminated on or after his fiftieth birthday and (2) he completed ten or more years of service. Upon satisfaction of these conditions, benefits vested under the Plan. McClain was thirty-three in 1973 when he ended his sixteen years at National Tea. Therefore, while McClain met the

second vesting condition, he did not satisfy the first. As a result, McClain's 1957-1973 accrued benefits did not vest before his "break in service," and, thus, pursuant to the pertinent Plan provisions, he was not entitled to pension benefits for the pre-break period.

This manner of disregarding service and denying benefits is consistent with ERISA § 203, 29 U.S.C. § 1053, which governs the vesting of benefits. In general, § 203(b)(1) requires a plan to count all of an employee's years of service for vesting purposes. However, so as not to disturb contractual arrangements in existence before ERISA, § 203(b)(1)(F) provides an exception to the general rule for pre-ERISA breaks in service. This exception allows a plan to disregard years of service before ERISA became applicable to the plan, here 1976, "if such service would have been disregarded under the rules of the plan with regard to breaks in service, as in effect on the applicable date." 29 U.S.C. § 1053(b)(1)(F). Simply put, the Plan here may disregard McClain's 1957-1973 service under § 203(b)(1)(F) because that service would have been disregarded under the applicable pre-ERISA rules of the Plan.

Acknowledging this roadblock, McClain did not bring his lawsuit[2] under § 203. Rather, he complains that the Plan's

---

[2]  McClain has fashioned this suit as a class action, but, pursuant to an agreement between the parties, the district court adjudicated the Plan's summary judgment motion without making a class certification ruling. Given the dispositive ruling at hand and the fact that the district court did not reserve the certification issue for future determination, the absence of a class certification ruling does not affect our jurisdiction under 28 U.S.C. § 1291. *See Harold Wash. Party v. Cook County, Ill. Democratic Party*, 984 F.2d 875, 878-79 (7th Cir. 1993). The lack of a certification ruling
(continued...)

denial of benefits runs afoul of ERISA § 204, 29 U.S.C. § 1054, which covers accrued benefits. Similar to § 203's general rule, § 204—particularly § 204(b)(4)(A)— requires a plan to credit all of an employee's years of service when determining the amount of the employee's accrued benefit. *See* 29 U.S.C. §§ 1054(b)(1)(D) & (b)(4)(A) (cross-referencing 29 U.S.C. §§ 1052(b)(1)-(4)). Nevertheless, unlike § 203, § 204 does not contain a parallel exception for McClain's situation; it is silent on pre-ERISA breaks in service. *See id.* McClain therefore reasons that, if, under § 204(b)(4)(A), all of his service must be counted, then the Plan must pay him pension benefits for his service with National Tea—irrespective of § 203(b)(1)(F). The Plan's failure to do so, argues McClain, violates § 204(b)(4)(A).

Under McClain's approach, there is a clear conflict between § 203 and § 204. Service that is permissibly disregarded under § 203 could not be disregarded under § 204. We squarely addressed and rejected such inconsistent treatment of pre-ERISA breaks in service in *Jones v. UOP*, 16 F.3d 141 (7th Cir. 1994). In interpreting these statutory provisions, we ruled in *Jones* that Congress did not intend § 204's silence on pre-ERISA breaks in service to "override" the explicit rules in § 203 for addressing such breaks. *Id.* at 143-44. Accordingly, we held that § 204 "should be read together with [§] 203" and should not "defeat break in service provisions in plans adopted before ERISA" existed. *Id.* at 144. The upshot is that, if a plan was contractually able to disregard an employee's pre-break service before ERISA became applicable, ERISA should not and does not retroactively upset the plan's pre-ERISA framework and award

---

(...continued)
merely means that the scope of the district court's judgment is limited to this particular plaintiff. *See id.*

unanticipated benefits to the employee. *See id.* at 143-44. Based upon *Jones*, the district court granted the Plan summary judgment.

Under *Jones* then, we must analyze McClain's § 204 claim in conjunction with § 203. Specifically, § 204(b)(4)(D) must be read together with the pre-ERISA break in service exception of § 203(b)(1)(F). As already discussed above, § 203(b)(1)(F) permits the Plan to disregard McClain's 1957-1973 service since that service would have been disregarded under the applicable pre-ERISA rules of the Plan. Therefore, pursuant to *Jones* and § 203(b)(1)(F), the Plan's denial of benefits did not violate § 204(b)(4)(D) as alleged by McClain.

McClain, nevertheless, seeks to have us overturn *Jones.* We require a compelling reason to overturn circuit precedent. *See Debs v. N.E. Ill. Univ.*, 153 F.3d 390, 394 (7th Cir. 1998) (citing *Mid-Am. Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1364 (7th Cir. 1996)). Furthermore, "principles of *stare decisis* require that we 'give considerable weight to prior decisions of this court unless and until they have been overruled or undermined by the decisions of a higher court, or other supervening developments, such as a statutory overruling.' " *Haas v. Abrahamson*, 910 F.2d 384, 393 (7th Cir. 1990) (quoting *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987)); *see also Debs*, 153 F.3d at 394. Here, there has been no such decision by a higher court or a statutory overruling.

McClain attempts to meet the compelling reason standard with two other arguments. First, he points to *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 320 F.3d 151, 156-59 (2d Cir. 2003), in which the Second Circuit

declined to follow *Jones*.[3] According to *McDonald* and McClain, Congress intended accrued and vested benefits to be treated differently. *Id.* at 159. *McDonald* posited that "had Congress intended to permit pre-ERISA break-in-service provisions to apply when calculating accrued benefits, it could have done so." *Id.* That is a fair point, but, with due respect, we find it unpersuasive. As discussed above, if § 203 and § 204 are not read together in the present situation, service that is permissibly disregarded under § 203 could not be disregarded under § 204. As we reasoned in *Jones*, Congress could not have intended such a result. 16 F.3d at 143-44. Section § 203(b)(1)(F) demonstrates clear congressional intent to have pre-ERISA contractual relationships regarding breaks in service continue after ERISA's enactment and, thus, under § 203(b)(1)(F), certain service may be disregarded. *See id.* To respect and effectuate this congressional intent, § 204(b)(4)(A) and § 203(b)(1)(F) should be read together. Moreover, "[i]t is an 'elementary canon of construction that a statute should be interpreted so as not to render one part inoperative[,]' " superfluous, or meaningless. *Jenkins v. Heintz*, 124 F.3d 824, 833 (7th Cir. 1998) (quoting *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 340-41 (1994)); *see also In re Scott*, 172 F.3d 959, 969 (7th Cir. 1999). So that the explicit break in service exception in § 203 should be read to have meaning and effect, § 204(b)(4)(A) should not be interpreted in a way that would

---

[3] *McDonald* is the only circuit opinion since *Jones* to address the issue. As observed in *Jones* and *McDonald*, the Third and Eighth Circuits have, like *Jones*, read § 204 and § 203 together. *See Jones*, 16 F.3d at 143 (citing *Jameson v. Bethlehem Steel Corp.*, 634 F. Supp. 688 (E.D. Pa.), *aff'd without opinion*, 802 F.2d 447 (3d Cir. 1986); *Redmond v. Burlington N. R.R. Co. Pension Plan*, 821 F.2d 461 (8th Cir. 1987)); *see also McDonald*, 320 F.3d at 159.

override § 203(b)(1)(F). The reasoning in *Jones* is sound, and we reaffirm it here.

Second, McClain cites a Labor Department regulation about accrual rules to support his position, contending that the regulation should be afforded deference in accordance with *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The regulation at issue is 29 C.F.R. § 2530.204-2(b). This regulation, like § 204(b)(4)(A), generally provides that all of an employee's service should be taken into account for accrual purposes under § 204. *See* 29 C.F.R. § 2530.204-2(b); *see also* 26 C.F.R. § 1.411(b)-1(c)(1). The regulation, however, does not speak to, let alone resolve, the § 203(b)(1)(F) conflict at issue. It simply does not advance the ball. If anything, the regulation lends support to *Jones* and the Plan. That is because the regulation, similar to § 203(b)(1)(F), looks to the applicable rules of a plan to determine what service should be counted by the plan: "all service from the date of participation in the plan *as determined in accordance with applicable plan provisions*, shall be taken into account in determining an employee's period of service." 29 C.F.R. § 2530.204-2(b) (emphasis added). McClain's regulatory argument does not offer a compelling reason to overturn *Jones.*

Consequently, pursuant to our decision in *Jones* and § 203(b)(1)(F), the Plan is entitled to summary judgment on McClain's § 204(b)(4)(D) claim.[4] Under the Plan's pre-ERISA framework, McClain's break in service precluded pension benefits for his time with National Tea, and ERISA does not

---

[4] In his opening appellate brief, McClain also preemptively raised a statute of limitations argument to which the Plan offered no response. As the Plan has abandoned this affirmative defense, it merits no further discussion here.

alter that contractual arrangement. The judgment of the district court is AFFIRMED.


A true Copy:

       Teste:

                        _____

                        *Clerk of the United States Court of*
                            *Appeals for the Seventh Circuit*